IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steel City Billboards, LLC,               :
                              Appellant   :
                                          :
              v.                          : No.  1476 C.D. 2023
                                          : Submitted:  February 4, 2025
Council of Borough of West Mifflin        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE STACY WALLACE, Judge (P.)
           HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  June 4, 2025


Steel City Billboards, LLC (Developer) appeals from the October 10, 2023 order of the Court of Common Pleas of Allegheny County (Common Pleas) affirming the West Mifflin Borough (Borough) Council's (Council) Adjudication denying Developer's application for a conditional use to construct an electronic billboard in the Borough.  On appeal, Developer argues Council erred in interpretating the Borough's Zoning Ordinance[1] (Ordinance) provisions regarding billboard spacing and in conducting the conditional use hearing.  Upon careful review, we affirm.

---

[1]   Borough of W. Mifflin, Pa., Zoning Ordinance (2010), *as amended*.

# I. Background

The parties do not dispute the essential facts in this matter. Developer applied to the Borough for a conditional use to install a 180-square-foot LED sign, measuring 18 feet by 10 feet, along Lebanon Road in the Borough. Reproduced Record (R.R.) at 165a-66a. Developer's proposed billboard is considered an "electronic changeable copy billboard" in the Ordinance. *Id.*

Council held a public hearing on Developer's conditional use application. *Id.* The only dispute at Council's hearing was whether Developer's proposal complied with Section 290-68 of the Ordinance's lateral spacing requirement for electronic changeable copy billboards. *Id.* That requirement provides:

> Electronic changeable copy billboards shall maintain a lateral minimum spacing of 1,000 feet between electronic changeable copy billboard structures or billboards. Required spacing shall be measured from a point perpendicular to the centermost point of the electronic changeable copy billboard structure along the front lot line parallel to the center line of the roadway to which the electronic changeable copy billboard is oriented.

Ordinance § 290-68(B)(5)(e).

Developer conceded there is an existing billboard located between 600 and 650 feet from Developer's proposed location. R.R. at 166a. Developer also conceded both its proposed billboard and the existing billboard could be viewed from a location between the two. *Id.* at 167a. Nevertheless, Developer argued Section 290-68 of the Ordinance's lateral spacing requirement did not prevent Developer's proposed billboard because it would be oriented in a different direction than the existing billboard. *Id.*

The Borough's Planning Commission recommended Council approve Developer's application. R.R. at 165a. The Borough's Director of Planning and

Development (Director), who was present at the Planning Commission's hearing, however, testified before Council that the Planning Commission had not considered Section 290-68(B)(5)(e) of the Ordinance's lateral spacing requirement. *Id.* at 167a.

Matthew Wilds (Wilds), an assistant real estate manager for Lamar Media, the company that owns the billboard approximately 650 feet from Developer's proposed location, provided comments during the public comment period of Council's hearing. Because Developer argues that the Borough's Solicitor (Solicitor), who was acting as Council's hearing officer in this matter, acted improperly during Wilds' public comments, we provide the relevant excerpts from Council's hearing transcript, as follows:

> Solicitor []: We will now have, for Council, since this is a Public Hearing, we're going to have - - that was the Applicant, so everyone understands, Steel City Billboards.
>
> I believe Lamar Media is here. They would like to speak.

R.R. at 81a-82a. Thereafter, Developer raised several objections to Wilds offering public comment, which were focused on Wilds' authority to speak on behalf of a corporate entity or on behalf of the landowner whose property Lamar Media leases. *See id.* at 83a-84a. Solicitor overruled those objections. *Id.* at 84a-85a. Solicitor then asked Wilds a series of questions to elicit his personal background, then permitted Wilds to provide comments. *Id.* at 85a-87a. After Wilds provided his comments, Solicitor asked Wilds additional questions, as follows:

> Solicitor []: And Mr. Wilds, . . . I do have a few questions for you.
>
> . . . .
>
> You heard [prior testimony]. Outside of your opposition to the 1,000 feet criteria, as outlined in Section 290-68, . . . is there any other opposition you have, or are you standing on the 1,000-foot argument?

3

Mr. Wilds:   No, that's all, the 1,000-foot spacing argument.

Solicitor []:  You heard [prior testimony] to this Council of how . . . the signage [can be] viewed in the opposite manner of one another, meaning one's turned one way and the other one is turned the other way . . . . What's your argument?

Mr. Wilds:  I think the word "oriented" means the roadway that the billboard [is] adjacent to, not the direction it faces.  If - -

Solicitor []:  Say that again for the record.

Mr. Wilds:   I - - that the word "oriented" refers to the roadway that is adjacent to the billboard or that the billboard [is] adjacent to, not the direction which it faces along that roadway.

So if - - if the facing of the billboard was taken into account, then someone could go along on a single side of the billboard and build one right behind it and say because it's facing the opposite way, the 1,000-foot spacing . . . wouldn't be applicable . . . .

R.R. at 87a-89a.

At the conclusion of Wilds' comments, Developer's Counsel asked if he could cross-examine Wilds. *Id.* at 89a.  Solicitor denied Developer's Counsel's request, as follows:

[Developer's Counsel]:   Can I cross-examine?

Solicitor []:  Well, I already cross-examined him.

[Developer's Counsel]:   Well, you're not representing my client.

Solicitor []:  Well, this is a Public Hearing . . . .

[Developer's Counsel]:   Right.

Solicitor []: I don't believe you should have the capability of cross-examining him today.

4

[Developer's Counsel]: Yeah, I think, actually, under the [Pennsylvania Municipalities Planning Code[2] (MPC),] we do have the right to cross-examine him. It's a hearing. He's under oath. I think he's under oath.

Solicitor[]: Well, I'm going to reserve my ruling on that. [Mr. Wilds, y]ou can sit down, but you're not permitted to leave.

R.R. at 89a-90a. Solicitor did not permit Developer to cross-examine Wilds later in the hearing. *Id.* at 97a. In addition, after Developer presented argument, Solicitor asked Wilds, "do you have anything further in rebuttal . . . to [Developer's Counsel's] rebuttal [arguments]?" *Id.* at 100a. Wilds did not offer any additional comments, and Solicitor concluded Council's hearing. *Id.*

Council issued a timely written Adjudication, explaining the word "oriented" in Section 290-68(B)(5)(e) of the Ordinance "refers to the means of measuring the distance between a proposed billboard and existing billboard." R.R. at 168a. Council, noting Developer's proposed billboard was only 650 feet from the nearest existing billboard, concluded Developer's "proposal for the construction of an electronic changeable copy billboard is in violation of the required minimum spacing of 1,000 feet set forth in Section 290-68(B)(5)(e) [of the Ordinance]." *Id.* Therefore, Council denied Developer's application for a conditional use.

Developer appealed Council's Adjudication to Common Pleas. Developer argued Council denied it due process due to Solicitor's conduct during the hearing. Specifically, Developer asserted Solicitor acted as an advocate and denied it the opportunity to cross-examine Wilds. Developer also argued Wilds did not have standing to participate in Council's hearing and Council erred in allowing Director to contest the Borough's Planning Commission's recommendation. Finally,

_____

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

5

Developer argued Council's interpretation of Section 290-68(B)(5)(e) of the Ordinance was erroneous. Common Pleas affirmed Council's Adjudication.

## II.    Issues

Developer appealed Common Pleas' decision to this Court, raising four issues for our review. First, Developer asserts Council[3] erred in interpreting Section 290-68(B)(5)(e) of the Ordinance to require 1,000 feet of lateral spacing between an electronic changeable copy billboard and any other billboard rather than another electronic changeable copy billboard. Second, Developer asserts Council erred in interpreting the Ordinance to apply to all billboards, regardless of which direction they face. Third, Developer asserts Solicitor deprived it of due process in conducting Council's hearing. Finally, Developer asserts Council acted in bad faith in denying its conditional use application.

## III.    Analysis

Because "Common Pleas did not take additional evidence in this zoning appeal," this Court's role "is limited to reviewing [Council]'s decision, not that of Common Pleas." *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (citation omitted). We evaluate whether Council committed an error of law, violated the appellant's constitutional rights, or violated agency policy and procedure. *See* 2 Pa.C.S. § 754. In addition, we evaluate whether substantial evidence supports Council's findings of fact. *Id.* For questions of law, such as whether a proposed use falls within a specific category of a zoning ordinance, "our standard of review is *de novo* and our scope of review is plenary." *Gorsline v. Bd. of Supervisors of Fairfield Twp.*, 186 A.3d 375, 385 (Pa. 2018). "In other words, we

---

[3]   Developer framed its issues as whether Common Pleas committed various errors. As we explain below, however, we review Council's decision, not Common Pleas' decision. As a result, we have reframed Developer's issues to comport with our standard of review.

6

do not defer to [Council's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024).

## A. Electronic Billboard Spacing

Developer's first issue for our review is whether Council erred in interpreting Section 290-68(B)(5)(e) of the Ordinance to require 1,000 feet of lateral spacing between *all* billboards as opposed to from one electronic changeable copy billboard to another electronic changeable copy billboard. *See* Developer's Br. at 15. Specifically, Developer asserts Section 290-68(B)(5)(e) of the Ordinance should not apply to the existing billboard because that billboard is a static billboard. *Id.*

Developer's Counsel, however, conceded this point at Council's hearing, stating:

> I believe the point, as I understood it, was that in measuring 1,000 feet you make no distinction between electronic billboards or static billboards.
>
> We agree with that. There's no dispute.

R.R. at 95a.[4]

It is well settled that a party waives any argument or issue it fails to raise before a local agency, like Council. *See Roomet v. Bd. of License & Inspection Rev.*, 928 A.2d 1162, 1165 n.2 (Pa. Cmwlth. 2007); *see also* 2 Pa.C.S. § 753(a) ("if a full and complete record of the proceedings before [a local] agency was made[, a] party may not raise upon appeal any other question not raised before the agency unless

---

[4]  Developer's Counsel also conceded in the brief it filed in Common Pleas that "at the hearing before Council, counsel for [Developer] indicated that the [] Ordinance could be read to apply to the distance between an electronic changeable copy billboard and a static billboard." *See* Original Record, Item No. 8 at 8 n.2.

allowed by the court upon due cause shown"). Here, not only did Developer fail to raise this issue before Council, Developer conceded the issue before Council. Accordingly, Developer waived review of its first issue.[5]

**B.      Billboard Orientation**

Developer's second issue for our review is whether Council erred in interpreting Section 290-68(B)(5)(e) of the Ordinance to prohibit billboards within 1,000 feet of an electronic changeable copy billboard, regardless of which direction the billboards are facing.  *See* Developer's Br. at 21-25.  Specifically, Developer asserts the word "oriented" in Section 290-68(B)(5)(e) of the Ordinance should be interpreted to apply the 1,000-foot lateral spacing requirement to billboards that are facing in the same direction.  *Id.*

"Although the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501-1991, is not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike."  *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020) (citations omitted).  The Pennsylvania Supreme Court has explained: "[Z]oning ordinances should receive a reasonable and fair construction in light of the subject matter dealt with and the manifest intention of the local legislative body." *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 500 (Pa. 2006) (citation omitted).  "[M]oreover, courts ordinarily grant deference to the zoning board's understanding of its own ordinance because, as a general matter,

---

[5]   Even if we were to consider the merits of Developer's first issue, Developer's argument fails because the Ordinance provides the 1,000-foot lateral spacing requirement is "between electronic changeable copy billboard structures **or billboards**."   Ordinance § 290-68(B)(5)(e) (emphasis added).

governmental agencies are entitled 'great weight' in their interpretation of legislation they are charged to enforce." *Id.* (citations omitted).

The word "oriented" appears in Section 290-68(B)(5)(e) of the Ordinance as follows:

> Required spacing shall be measured from a point perpendicular to the centermost point of the electronic changeable copy billboard structure along the front lot line parallel to the center line of the roadway to which the electronic changeable copy billboard is **oriented**.

Ordinance § 290-68(B)(5)(e) (emphasis added). First, we note this sentence specifies how the 1,000-foot lateral spacing requirement is to be measured. Second, we note the word "oriented" is used as a means of locating the roadway along which an electronic changeable copy billboard is located. Accordingly, on a plain reading of Section 290-68(B)(5)(e), we conclude Council's interpretation that the word "oriented" "refers to the means of measuring the distance between a proposed billboard and [an] existing billboard," R.R. at 168a, is a reasonable interpretation. Therefore, we defer to Council's interpretation of its own Ordinance, and Developer's argument fails.

## C.  Developer's Due Process Concerns

Developer's third issue for our review is whether Solicitor deprived it of due process throughout Council's hearing. Developer first argues Solicitor questioned the witnesses as an advocate in opposition to Developer's application rather than acting as an independent arbiter. *See* Developer's Br. at 35. As this Court has explained,

> an administrative tribunal[ ] has the power to ask questions to clarify matters and to elicit relevant information not presented by counsel. *Dayoub v. State Dental Council [&] Examining B[d.*, 453 A.2d 751, 753 (Pa. Cmwlth. 1982)]. [It] will have overstepped its bound only

9

when it heatedly questions and argues with [a party] and [his/her] witnesses "in such a manner that [the presiding officer's] behavior . . . [is] much more in line with that of a prosecuting attorney than of a neutrally detached and impartial decision-maker." [*Id.*]

*Shah v. State Bd. of Med.*, 589 A.2d 783, 797 (Pa. Cmwlth. 1991).

Upon review of the transcript of Council's hearing, it is evident Solicitor permitted each witness to testify and asked each witness questions to develop a complete record. *See generally* R.R. at 35a-103a. Solicitor did not argue with the witnesses or act in an adversarial capacity. *See id.* As a result, we conclude Solicitor did not err in questioning the witnesses at Council's hearing.

Developer next argues Solicitor erred in calling Wilds as a witness, despite Wilds having "neither identified himself, stood to be sworn, nor requested to be heard." *See* Developer's Br. at 35. While Solicitor did identify the presence of Lamar Media without being prompted on the record, Solicitor did not call Lamar Media as a witness. *See* R.R. at 81a-82a. Instead, Solicitor opened the floor to public comments and noted that a representative from Lamar Media was present. Developer speculates how Solicitor knew Lamar Media wanted to provide public comments, but Developer's arguments are not based on any record evidence and are purely speculation.[6] As a result, Developer's argument Solicitor erred in permitting Wilds to provide public comments does not prevail.

Developer next argues Solicitor acted as an advocate when he, through questioning, enticed Wilds to testify regarding the meaning of the word "oriented" in Section 290-68(B)(5)(e) of the Ordinance. Solicitor was, however, permitted to

---

[6] Developer asserts Solicitor had some form of business relationship with Lamar Media and, therefore, should have recused himself from conducting Council's hearing. Developer's assertion, however, is not supported by any record evidence. In addition, Developer did not object to Solicitor's participation as the hearing officer at or before Council's hearing.

develop the record by obtaining Wilds' position. Therefore, Developer's argument fails.

Finally, Developer argues Solicitor erred in preventing Developer from cross-examining Wilds. *See* Developer's Br. at 38-39. We agree. Section 908(5) of the MPC unambiguously establishes that "parties . . . shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues." 53 P.S. § 10908(5). Developer is a party in this matter, and Wilds was an adverse witness. As a result, Solicitor's refusal to permit Developer to cross-examine Wilds was an error, which not only violated the MPC but also violated Developer's due process rights.

In many situations, Solicitor's error would necessitate some form of relief, up to and including a remand for a new hearing. Here, however, Wilds' public comments were not capable of changing this outcome. Developer admitted there was an existing billboard within 650 feet of its proposed electronic changeable billboard. As a result, no comment Wilds made, nor any answer Wilds could have given to a question on cross-examination, would have changed the fact that Developer was disqualified from receiving its requested conditional use under Section 290-68(B)(5)(e) of the Ordinance. Therefore, although Solicitor erred in preventing Developer from cross-examining Wilds, Solicitor's error was harmless in this matter.

## D. Bad Faith

Developer's fourth issue for our review is whether Council acted in bad faith in denying its application for a conditional use. *See* Developer's Br. at 45. Developer first argues Council relied upon Wilds' lay testimony in interpreting the Ordinance. *Id.* at 46-47. As outlined above, Council was required to reach its

11

determination regardless of Wilds' public comments. In addition, Council summarized all of the participants' and witnesses' comments and testimony, including Wilds', in its Adjudication. *See* R.R. at 165a-69a. Then, Council rendered its own findings of fact and conclusions of law, without specifically relying on any of the participants' or witnesses' positions. *Id.* Developer's characterization of Council's decision as relying upon Wilds' public comments is, therefore, a mischaracterization of Council's Adjudication. Consequently, Developer's first argument fails.

Developer also argues that Council erred in permitting the testimony of its direct competitor, Lamar Media, which Lamar Media was using as a means of impeding competition. *Id.* at 47-48. The record reflects Wilds, as Lamar Media's representative,[7] spoke during the public comment period and did not appear as a party in this matter. Members of the general public are permitted to attend hearings and offer input under the MPC. *See* 53 P.S. § 10908. Accordingly, we conclude Council did not err in permitting Wilds to provide public comments during its hearing.

Finally, Developer asserts Council erred in allowing Director to testify that the Borough's Planning Commission erred in making its recommendation. *See* Developer's Br. at 49-50. Again, even if Council so erred, Director's testimony was not capable of changing the outcome in this matter. Developer admitted there is an

---

[7]    While Developer argued before Council that Wilds did not have authority to testify on behalf of Lamar Media, and while Developer repeated that assertion in its Brief, Developer did not develop an argument on this point or provide citation to authority. Accordingly, Developer waived this issue. *See Commonwealth v. Brown*, 196 A.3d 130, 185 n.21 (Pa. 2018) (The Court declined to analyze an issue where the party failed to develop an argument and noted appellate courts are "neither obliged, nor even particularly equipped, to develop an argument for a party."). Even if Developer preserved this issue, however, we would still affirm Council's decision for the reasons set forth above.

existing billboard within 650 feet of Developer's proposed electronic changeable copy billboard. As outlined above, Section 290-68(B)(5)(e) of the Ordinance requires a minimum of 1,000 feet of lateral spacing between an electronic copy billboard and any existing billboard. Consequently, regardless of the conduct of the parties, the hearing officer, or the attorneys, Developer is not entitled to a conditional use.

## IV. Conclusion

For the reasons set forth above, we affirm Common Pleas' October 10, 2023 order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steel City Billboards, LLC,    :
                     Appellant  :
                                :
         v.                     :  No.  1476 C.D. 2023
                                :
Council of Borough of West Mifflin  :

# **O R D E R**

**AND NOW**, this 4th day of June 2025, the October 10, 2023 order of the Court of Common Pleas of Allegheny County is hereby **AFFIRMED**.

_____
STACY WALLACE, Judge